# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |
|---|---|
| DENISE M. DAVIS and <br> R. CRAIG DAVIS, <br>                  Plaintiffs, <br>     v. <br> DEUTSCHE BANK NATIONAL TRUST <br> COMPANY AS TRUSTEE, <br> HOMEWARD RESIDENTIAL, INC., and <br> OCWEN LOAN SERVICING, LLC, <br>                  Defendants. | CIVIL ACTION <br><br> NO. 16-5382 |

## MEMORANDUM

Henry S. Perkin, M.J.                                                                                                       September 19, 2017

       This matter is before the Court on the Defendants' Motion to Dismiss the entirety of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Motion was filed on November 17, 2016, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion was filed on December 1, 2016 and Defendants' Reply Brief was filed on December 8, 2016. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This case was originally assigned to the docket of the Honorable Joseph F. Leeson. The parties consented to trial before the undersigned pursuant to 28 U.S.C. § 636 and Judge Leeson approved the consent and ordered the case transferred on January 4, 2017. See Dkt. No. 12. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

I.     **PROCEDURAL HISTORY.**

       Plaintiffs R. Craig Davis and Denise Davis ("Plaintiffs") initiated this matter on September 16, 2016 against Defendants Deutsche Bank National Trust ("Deutsche Bank"),

Homeward Residential, Inc. ("Homeward"), and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, ("Defendants")) in the Court of Common Pleas of Lancaster County.[1] On October 13, 2016, Defendants filed a Notice of Removal to this Court. In Counts I and III of the Complaint, Plaintiffs allege claims for breach of contract against Deutsche Bank and Homeward. In Counts II and IV of the Complaint, Plaintiffs allege claims for breach of contract against Deutsche Bank and Ocwen. In Count V of the Complaint, Plaintiffs' claim is against Ocwen and Deutsche Bank for violations of the Real Estate Settlement Procedures Act. See 12 U.S.C. § 2605(e).

## II. FACTUAL BACKGROUND.

Taking the averments in the Complaint in the light most favorable to the Plaintiffs as the non-moving party, the pertinent facts to this Court's determination are as follows:

On January 6, 2006, Plaintiffs obtained a loan from American Home Bank in the

---

[1] The state court complaint which was removed to this Court contains the following introductory paragraphs:

> This case is filed to present critical and necessary issues which should be before the Court for the fair and balanced adjudication of the foreclosure matter currently pending entitled Deutsche Bank Nation Trust as Trustee v. Davis, Lancaster County CCP #15-05856. The issues contained herein are issues which were objected to in the above reference matter and ruled not allowed to be presented in the foreclosure case to the narrow scope of an in rem foreclosure proceeding. Plaintiff herein will move to consolidate this matter pursuant to Pennsylvania Rule of Civil Procedure 213 with the foreclosure case as it presents common legal issues and defenses and arises from the transaction with Defendants.
>
> In this case, Plaintiffs claims against Defendants are several. First, Plaintiff's goal is to obtain a remedy for Defendant's breach of contract. Through Defendant's breach of contract in the deficient servicing of Plaintiff's home mortgage loan namely the failure to properly calculate and demand required escrow Defendants manufactured a "default" on the mortgage which is the subject of the proposed companion mortgage foreclosure case. Second, Plaintiff requests damages for the failure of Ocwen's to respond notices of error and correct errors, namely the escrow account and collecting escrow in excess of the amount detailed in the Real Estate Settlement Procedures Act. (RESPA")

Dkt. No., pp. 1-2.

amount of $260,000. Compl., ¶ 21. Plaintiffs granted American Home Bank a mortgage as security for repayment of the loan on their home located at 5 Thicket Lane, Lancaster, PA 17602.[2] Id., ¶ 22. American Home Bank assigned the mortgage to Option One Mortgage Corporation in 2006 which then assigned it to Deutsche Bank in 2015. Compl., Ex. A., p. 1. The mortgage agreement provides that the lender may hire or appoint a loan servicer to collect loan payments and administer the loan. Compl., ¶ 21. The mortgage is a federally qualified loan as defined by the Real Estate Settlement Procedures Act ("RESPA"). Id., ¶ 23. Payments under the loan were $1,858.18, and it is not apparent that an escrow account for payment of taxes and insurance was established when the property was conveyed. Id., ¶¶ 24, 41.

The mortgage states that the "[b]orrower shall pay taxes, assessments, charges, and fines and impositions attributable to the property which may attain priority over this security Instrument." Defs.' Mot., Ex. 1, p. 3 § 4. In and around 2011, the Plaintiffs fell behind in payment of the property taxes. Compl., ¶ 25. In July 2012, Plaintiffs paid delinquent taxes in the

---

[2] Although the Plaintiffs do not state how Deutsche Bank became mortgagee of Plaintiffs' mortgage which was originally granted to American Home Bank, the Court notes that Exhibit A attached to the state court complaint which was removed to this Court is a copy of the docket entries from the Lancaster County Prothonotary for the case of Deutsche Bank National Trust Company v. Denise M. Davis, et al., Case No. CI-15-05856. The first entry dated July 8, 2015, states the following:

> Complaint in mortgage foreclosure filed by Sherri J. Braunstein, Esq. of Udren Law Offices, P.C. Mortgage was executed to American Home Bank, N.A., a Pennsylvania corporation. **Mortgage was assigned to Option One Mortgage Corporation, a California corporation in Mortgage Instrument No. 5609293 on 02/07/2006. Mortgage was assigned to Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT2, Asset-Backed Certificates, Series 2006-OPT2 in Mortgage Instrument No. 6198166 on 03/31/2015. Mortgage was recorded in Recorder of Deeds Office in Mortgage Instrument No. 5496043. For property located at 5 Thicket Lane, Lancaster, PA 17602. Mortgage was executed on 02/02/2006.**

Dkt. No. 1, Ex. A., p. 1 (emphasis added). Based on this information and for the purposes of this Motion, the Court assumes that both the mortgage and note were assigned to Deutsche Bank, which is now the mortgagee of the subject property.

3

amount of $5,599.54. Id., ¶ 26. Homeward, the loan servicer at the time, also paid the delinquent taxes. Id., ¶ 28. Plaintiffs notified Homeward that the taxes were paid and Homeward received a refund for the duplicate tax payment from the taxing authority. Id., ¶¶ 29, 30. Homeward then began an escrow analysis. Id., ¶ 31. Shortly after the tax refund payment to Homeward, Defendant Ocwen became the Plaintiffs' mortgage loan servicer, replacing Homeward. Id., ¶ 36.

As the new mortgage servicer, Ocwen required a tax escrow. Id., ¶ 40. Prior to this time, Plaintiffs did not escrow their taxes. Id., ¶ 41. Ocwen demanded a new monthly payment of $2,424.71, which is $566.53 more than the Plaintiffs' monthly payment when Homeward serviced the mortgage. Id., ¶¶ 46, 47. Plaintiffs continued to make monthly payments of $1,858.18 despite Ocwen's demand for a new monthly payment of $2,424.71. Id., ¶¶ 46, 60. Upon notification of the change in payment demand, Plaintiffs wrote to Ocwen on several occasions, requesting that Ocwen review its escrow analysis, which Plaintiffs perceived to be erroneous and double the required amount of taxes. Id., ¶¶ 44, 48. The Plaintiffs wrote to Ocwen on July 21 and August 21, 2013, and Plaintiffs' counsel wrote to Ocwen on August 14, 2014, placing Ocwen on notice of an error regarding the escrow account. Id., ¶¶ 49, 54. Over two weeks after Ocwen received the August 14, 2014 correspondence from the Plaintiffs' counsel, Ocwen responded by sending Plaintiffs' counsel an escrow statement. Id., ¶¶ 55, 56. On August 28, 2014, Plaintiffs' counsel again wrote to Ocwen, placing Ocwen on notice of an error concerning the escrow account. Id., ¶ 57. Ocwen did not respond to that letter. Id., ¶ 58. Ocwen then sued the Plaintiffs in foreclosure on July 8, 2015 in the Court of Common Pleas of Lancaster County. Compl., ¶ 61; Ex. A., p. 1.

4

## III. STANDARD OF REVIEW.

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007)(citation omitted).

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 668. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. When facing a motion to dismiss for failure to state a claim, district courts are directed to conduct a three-part analysis. Connelly v. Lance Constr. Corp., 809 F.2d 780, 787 (3d Cir. Jan. 11, 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (Citation and editorial marks omitted)). Finally, "[When] there are well-pleaded factual allegations, [the] court

5

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 566 U.S. at 679.

IV.     **DISCUSSION.**[3]

   A.     **Breach of Contract - Homeward and Deutsche Bank (Counts I and III)**

In Count I of the Complaint, Plaintiffs claim that the mortgagee, Deutsche Bank, and the first mortgage loan servicer, Homeward, breached the mortgage contract under Pennsylvania law. In Count III of the Complaint, Plaintiffs allege the following:

> 74. The mortgage contract between Plaintiff and Deutsche contains limitations on the amount of funds that can be requested to be held in escrow. Exhibit I
>
> 75. Lender and their servicer may not request funds in excess of the amount permitted under the Real Estate Settlement Procedures Act. 12 USC 2609(a)
>
> 76. This limitation is no more than the amount of yearly taxes, insurance, flood insurance and other detailed charges. Exhibit I
>
> 77. Deutsche, through Homeward, demanded escrow in excess of the amounts as allowed by the contract, namely an amount in excess of the property taxes.
>
> 78. This demand increased the monthly payment and breached the contract.

---

[3] "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016)(quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). Plaintiffs attach to the Complaint the second page of the mortgage contract at Exhibit I. The Defendants, on the other hand, attach the entire mortgage contract to their Motion to Dismiss and argue that this Court may consider the entire mortgage agreement without converting the instant motion into one for summary judgment. See Br. In Supp. Mot. to Dismiss, p. 2 n.1 and Ex. 1.

Because the Plaintiffs have undisputed actual notice of all the information in the Defendants' motion and the Plaintiffs have relied upon this information in framing the Complaint, this Court is able to view the entire mortgage contract on review of this motion to dismiss. Pension Benefit Guaranty Corp. v. White Consolid. Indust., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert denied, 503 U.S. 960 (1992)). See also Jacobs v. Halper, 116 F.Supp.3d 469, 473 n.1 (E.D. Pa. 2015)(quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)(entire catalogue attached as exhibit to motion to dismiss considered where same catalogue was attached in part as exhibits to amended complaint and relied upon by plaintiff).

> 79. As a direct and proximate cause of the actions of Homeward as agent for Deutsche Bank, Deutsche breached their contract.
>
> 80. As a direct and proximate result of the actions of the Defendants Deutsche and Homeward Plaintiff has been damaged.
>
> 81. This illegal demand has created a false "default" resulting in a wrongful foreclosure.

Compl., pp. 9-10 ¶¶ 74-81. In order to bring a claim for breach of contract under Pennsylvania law, the plaintiff must plead the existence of a contract, a breach of that contract, and damages as the result of that breach. Zokaites Contr., Inc. v. Trant Corp., 968 A.2d 1282, 1287 (Pa. Super. 2009). In this case, neither Plaintiffs nor Defendants dispute that a contract existed, but Defendants claim that they did not breach the mortgage and Plaintiffs did not suffer any damages. Defendants correctly contend that the mortgage permits the mortgagee to require an escrow for taxes and reasonable estimates of future expenditures. The Defendants also contend that the law requires an escrow analysis to be completed before an escrow account is established and Homeward followed this requirement.

In response, Plaintiffs contend that Homeward's alleged failure to properly service the loan resulted in damages to them. The Defendants state that it appears that the Plaintiffs' claim for breach of contract against Deutsche Bank and Homeward may be based on Homeward's completion of an escrow analysis prior to the loan servicing transfer to Ocwen. The Plaintiffs neither counter this contention nor clarify how Homeward failed to properly service the mortgage.

A plain reading of the mortgage contract permits the loan servicer to create an escrow account. The mortgage contract states, in pertinent part, that:

> [l]ender may, at any time, collect and hold funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for borrowers escrow account . . . Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

Defs.' Mot. to Dismiss, Ex. 1 at § 2. This language allows a loan servicer to create an escrow account and collect funds for that escrow account. Homeward must complete an escrow account analysis under federal law because the "servicer must conduct an escrow account analysis to determine the amount the borrower must deposit into the escrow account." 12 C.F.R. § 1024.17(c)(ii)(2). Since the mortgage allows the loan servicer to create an escrow account and by law an escrow account analysis must be conducted before an account is established, Homeward did not breach the contract when it performed an escrow account analysis.

Defendants argue that Count III should be dismissed because the Complaint is devoid of facts suggesting that Homeward demanded an improper amount of escrow. The sequence of events as stated in the Complaint indicates that this alleged improper escrow demand occurred after the servicing rights were transferred from Homeward to Ocwen. Compl., ¶¶ 36-47. The applicable facts in the Complaint as applied to Homeward are:

> 31. [Homeward], on behalf of Deutsche, in violation of the contract began an escrow analysis,
>
> 32. [Homeward] was placed on notice of an escrow problem but failed to address and correct this problem.
>
> 33. Deutsche, through the actions of their agent [Homeward], breached their contract to Plaintiff by failing to properly service the loan contract.
>
> 34. Defendant continued to pay their mortgage payment, including principal and interest.
>
> 35. Subsequently, [Plaintiffs'] mortgage payments were rejected by [Homeward],

8

which then created the default upon which this mortgage foreclosure action is based.

Compl., pp. 5-6, ¶¶ 31-35. Plaintiffs fail to allege a problem with the escrow as to Homeward, how Homeward was notified of a problem or how Homeward failed to correct the alleged escrow problem. Taking all of the Plaintiffs' allegations in Counts I and III of the Complaint as true and in a light most favorable to them, Plaintiffs fail to state a claim upon which relief can be granted for breach of contract as to Homeward and Deutsche Bank. According to the Third Circuit, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Jones v. ABN AMRO Mortg. Grp., Inc., 551 F. Supp.2d 400, 411 (E.D. Pa. 2008), aff'd, 606 F.3d 119 (3d Cir. 2010)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004))). Accordingly, the Motion to Dismiss Counts I and III is granted with an opportunity for Plaintiffs to amend their Complaint.

### B. Breach of Contract Against Deutsche Bank and Ocwen (Counts II and IV)

Counts II and IV of Plaintiffs' Complaint allege breach of contract against the second mortgage servicer, Ocwen, and Deutsche Bank, the Note Holder. Count II contains the allegation that "Ocwen, on behalf of Deutsche, failed to properly service the mortgage loan." Compl., p. 9 ¶ 69. In Count IV of the Complaint, Plaintiffs allege the following:

> 83. The mortgage contract between Plaintiff and Deutsche contains limitations on the amount of funds that can be requested to be held in escrow. Exhibit I
>
> 84. Lender and their servicer may not request funds in excess of the amount permitted under the Real Estate Settlement Procedures Act. 12 USC 2609(a)
>
> 85. This limitation is no more than the amount of yearly taxes, insurance, flood insurance and other detailed charges. Exhibit I

9

> 86. Deutsche, through Ocwen, demanded escrow in excess of the amounts as allowed by the contract, namely an amount in excess of the property taxes.
>
> 87. This demand increased the monthly payment and breached the contract.
>
> 88. As a direct and proximate cause of the actions of Ocwen as agent for Deutsche Bank, Deutsche breached their contract.
>
> 89. As a direct and proximate result of the actions of the Defendants, Deutsche and Ocwen, Plaintiff has been damaged.
>
> 90. This illegal demand has created a false "default" resulting in a wrongful foreclosure.

Compl., pp. 10-11 ¶¶ 83-90. Defendants move to dismiss the claims in Count II as vague and duplicative of the claims in Count IV and move to dismiss the claims in Count IV as meritless.

The Defendants allege that the mortgage does not impose any hard cap on the amount that may be escrowed and allows the mortgagee to estimate funds based on current data and reasonable estimates. They cite federal regulations that allow for the "life of the escrow account the servicer may charge the borrower a monthly sum equal to one-twelfth of the total (1/12) of the total annual escrow payments which the servicer reasonably anticipates paying from the account." 12 C.F.R. § 1024.17(c)(ii). The mortgagee can also require a "cushion no greater than one-sixth (1/6) of the estimated total annual payments." Id.

While it is true that under 12 C.F.R. §1024.17(c)(ii) the mortgage servicer is allowed to charge more on an escrow account as a cushion, a question remains whether the amount charged in this case was excessive. The Plaintiffs contend that the escrow amount charged by Ocwen was excessive because they contend that it was more than allowed by the mortgage contract, namely an excess of the property taxes. Compl., ¶ 86. Neither the Plaintiffs nor Defendants state the actual amount of taxes levied on the Plaintiffs' property. Plaintiffs paid

10

$1,858.18 monthly and then were charged an additional $566.53 monthly. The annual property tax amount is critical to determining if the additional $566.53 monthly escrow amount is excessive and breaches the mortgage contract.

Plaintiffs attach to the Complaint a 2012 school tax bill for $5292.96.[4] Compl., Exs. C, D. In performing the escrow account analysis, the mortgage servicer could reasonably anticipate charging Plaintiffs in 2012 on a monthly basis the equivalent of one-twelfth of $5292.96, or $441.08. See 12 C.F.R. § 1024.17(c)(ii). In addition, the mortgage servicer would be permitted to charge Plaintiffs a maximum of one-sixth of $5292.96, or $882.16. Id. These figures do not include escrow of annual municipal and county taxes. Plaintiffs were charged an additional $566.63 per month for escrow by Ocwen. Because this amount is within the minimum amount of $441.08 and the maximum amount of $882.16 of possible escrow just for school taxes in calendar year 2012, the billed escrow amount of $566.63 does not appear in excess of the amounts allowed by the mortgage which the mortgage servicer could reasonably escrow.[5] Thus, Defendants' Motion to Dismiss must be granted as to Count IV of the Complaint and leave to amend will not be granted because it appears that the billed escrow amount charged Plaintiffs by Ocwen, as stated in the Complaint, was a permissible amount, even without consideration of the municipal and county taxes.[6]

With respect to Count II of the Complaint, Defendants contend that this Count is

---

[4] This bill indicates that Homeward was the mortgage servicer in 2012. See Compl., Ex. C.

[5] The Court cannot discern from the Complaint, the Motion to Dismiss or any other briefing whether the escrow charged was for school taxes or also for county and municipal taxes.

[6] Plaintiffs allege that the escrow amount was twice the allowable escrow amount. According to the information provided with respect to only school taxes, this escrow amount would likely be substantially less than an overall amount of the *total* property taxes, i.e. school, municipal and county taxes, assessed on Plaintiffs' property.

duplicative of Plaintiffs' allegations in Count IV and it is vague and does not actually state in what way Ocwen or Deutsche Bank actually breached the contract. Mot. to Dismiss at 5. In Count II, Plaintiffs allege that, "Ocwen, on behalf of Deutsche, failed to properly service the loan." Compl., ¶ 69. The Plaintiffs in their Response to the Defendants' Motion do not counter the argument that Count II is duplicative of Count IV, they merely restate that they believe the contract was breached and that damages resulted. The Response cites only paragraphs in the Complaint stating the mortgage was not properly serviced and as a result, a breach of contract existed. Compl., ¶¶ 69-70.

In Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626 (E.D. Pa. 2010), the concept that the court has the authority to dismiss duplicative counts in a complaint was recognized. The Brown complaint contained two counts alleging unfair competition, one citing state unfair competition law and the other setting forth a barebones allegation of unfair competition. Id. at 626. The Court held that one claim was dismissed in its entirety since the two claims were substantially identical and one count was duplicative of the other. Id. at 626-627. In the present case, Count II is a barebones allegation of breach of contract while Count IV gives a more substantive allegation of breach of contract. As set forth above, Count IV will be dismissed without leave to amend the Complaint as to this claim. With respect to Count II, however, if Plaintiffs are able to sufficiently plead additional facts to support a general claim for breach of contract, the Defendants' Motion to Dismiss with regard to this claim will be granted with an opportunity for Plaintiffs to amend the Complaint as to Count II.

### C. Violation of the Real Estate Settlement Procedures Act Against Ocwen (Count V)

In Count V of the Complaint, the Plaintiffs allege that Ocwen violated 12 U.S.C. § 2605(e) of the Real Estate Settlement and Procedures Act ("RESPA") by failing to respond to their qualified written requests for information, causing Plaintiffs to suffer damages. Defendants move to dismiss these claims on the basis that the Plaintiffs do not adequately plead a causal link between any alleged violation of RESPA and Plaintiffs' damages. The essential pleading requirements for a RESPA claim are: (1) the submission of a qualified written request by a borrower to a loan servicer for information relating to the servicing of the loan, (2) a failure by the loan servicer to timely respond, and (3) damages. Hawk v. Carrington Mortg. Servs., LLC, 2016 U.S. Dist. LEXIS 87532, at *12 (M.D. Pa. June 29, 2016). Each of these elements will be discussed in turn.

First, the borrower must submit a qualified written request to the loan servicer. A qualified written request must be a written correspondence, other than notice on a payment coupon or other payment medium. 12 U.S.C. § 2605(e)(1)(B). The written request must include the identity, name and account number of the borrower. 12 U.S.C. § 2605(e)(1)(B)(i). The written request must also include a statement of the reasons why the borrower believes the account is in error. 12 U.S.C. § 2605(e)(1)(B)(ii). In this case, the Plaintiffs and Plaintiffs' counsel sent four letters to Ocwen pertaining to a perceived error. In the exhibits attached to the Complaint, the letters state the Plaintiffs' name, account number, and a statement of the perceived error. Compl., Exs. F and H. The Defendants do not challenge that these letters were qualified written statements. Therefore, it appears that the first requirement for a RESPA claim is

13

met.

The second RESPA element is that the loan servicer failed to timely respond to the written request for information from the borrower. The loan servicer must, within five days of receipt of a written request for information, send an acknowledgement of receipt of the written request. 12 U.S.C. § 2605(e)(1)(A). Within thirty days, the loan servicer must conduct an investigation and send back written notice why it believes the account is correct or that the account was appropriately corrected. 12 U.S.C. § 2605(e)(2), *et seq*. In this case, Plaintiffs allege that Ocwen did not respond to Plaintiffs' counsel's written request until almost two weeks after it was sent. Then, Plaintiffs allege that Ocwen responded only with a letter containing details of the escrow account, and the response did not include a reason why the escrow account was correct. Plaintiffs also allege that a subsequent letter from Plaintiffs went unanswered. Compl., Exs. G and H. Defendants, again, do not contest these allegations. Therefore, it appears that the second requirement for a RESPA claim has been met.

Finally, there is the issue of damages. RESPA permits individual borrowers to sue loan servicers for damages in certain specifically defined circumstances, stating that:

> (f) Damages and costs
> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
> (1) Individuals
> In the case of any action by an individual, an amount equal to the sum of -
> > (A) any actual damages to the borrower as a result of the failure; and
> > (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f). In order to claim damages under RESPA, merely alleging damages is not

enough. Hawk, 2016 U.S. Dist. LEXIS 87532, at *12-13. The Plaintiff must allege that the breach resulted in actual damages. Jones v. Select Portfolio Servicing, Inc., 2008 U.S. Dist. LEXIS 33284, at *27 (E.D. Pa. Apr. 22, 2008). See Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006). The plaintiff must also establish a causal link between the alleged violations and the alleged damages. Jones, 2008 U.S. Dist. LEXIS 33284, at *28. Likewise, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and the borrower's injuries. Straker v. Deutsche Bank Nat'l Trust, 2012 U.S. Dist. LEXIS 187379, at *31 (M.D. Pa. Apr. 26, 2012).

For statutory damages for non-compliance of RESPA, the plaintiff must establish a pattern of practice or practice of non-compliance of § 2605. Gorbaty v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 55284, at *19 (E.D.N.Y. 2012). That is, the plaintiff must show that the alleged violations were the standard or routine way of operating for the allegedly non-compliant loan servicer. McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009). Regarding their claim for statutory damages under RESPA, the Plaintiffs contend that Ocwen's actions are in "non-compliance with the RESPA" and these actions are "systemic and indicate[] a pattern of noncompliance." Compl., ¶ 103. No specific facts in the Complaint support Plaintiffs' contention that Ocwen engaged in a pattern or practice of violating RESPA. Importantly, the Complaint contains no allegations that Ocwen violated RESPA as to any other unnamed party. The Plaintiffs only offer their four letters to Ocwen in support of their statutory damages claim and only provide evidence that Ocwen did not respond to two of the four letters. This is insufficient to prove a pattern or practice of violations of RESPA on Ocwen's part. See Gorbaty, 2012 U.S. Dist. LEXIS 55284, at *19 (mere failure to respond to two letters is not

15

sufficient to establish a pattern or practice). Thus, Plaintiffs' claim for statutory damages pursuant to alleged RESPA violations must be dismissed. See 12 U.S.C. § 2605(f)(1)(B).

With respect to actual damages, Plaintiffs allege that they suffered "actual damages including but not limited to anxiety, worry, distress, . . . and enhanced damages." Compl., ¶ 104. The Defendants argue that the Plaintiffs cannot show actual damages due to their failure to establish a causal link between the alleged RESPA violations and any actual damages. Plaintiffs claim that the causal link is shown from paragraphs 92 through 101 of the Complaint. Those paragraphs, however, contain only averments that the Plaintiffs sent Ocwen qualified written requests for information. "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014)(quoting Cortez v. Keystone Bank, Inc., No. Civ.A. 98–2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000)).

The Defendants contend that there is no connection between the Plaintiffs' allegations of RESPA violations by Ocwen and actual damages that Plaintiffs may have suffered therefore the claim for violations of RESPA should be dismissed as a matter of law, citing Hawk v. Carrington Mortg. Servs., LLC, Civ. A. No. 3:14-1044, 2016 WL 4414844, *12 (M.D. Pa. June 23, 2016), for the statement that "[w]hen a plaintiff fails to plead or prove a direct causal connection between the RESPA violation and some specific and identifiable damages, the loan servicer is entitled to judgment as a matter of law." The procedural posture of the Hawk case and the court's statement was at the summary judgment stage. At this earlier stage in the instant

litigation, the Motion will be granted but the Plaintiffs may amend their Complaint as to this claim, setting forth a more specific damages claim providing a causal connection between Ocwen's actions and Plaintiffs' damages.

V.      **CONCLUSION.**

For the reasons set forth above, Defendants' Motion to Dismiss will be granted. With respect to the claims in Counts I, II, III and V, Plaintiffs are given leave to amend the Complaint within fourteen (14) days of this date. With respect to the claims in Count IV, the Motion is granted and no leave shall be granted to amend.

An appropriate Order follows.