IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                            :
DENISE M. DAVIS and                         :
R. CRAIG DAVIS,                             :
                                            :
            Plaintiffs                      :
                                            :
      v.                                    :  CIVIL ACTION
                                            :  NO. 16-5382
DEUTSCHE BANK NATIONAL TRUST                :
COMPANY AS TRUSTEE,                         :
HOMEWARD RESIDENTIAL, INC., and             :
OCWEN LOAN SERVICING, LLC,                  :
                                            :
            Defendants.                     :
_____ :

**Henry S. Perkin, M.J.**                                    **December 12, 2017**

## MEMORANDUM

This matter is before the Court on Defendants' Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment filed on October 18, 2017. Defendants' Brief in Support of Motion to Dismiss Amended Complaint, or in the Alternative, for Summary Judgment was filed on October 18, 2017. Plaintiffs' Brief in Opposition to the Defendants' Motion to Dismiss was filed on November 16, 2017. Defendants' Reply Brief in Support of Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment was filed on December 6, 2017. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

**I.      PROCEDURAL HISTORY**

Plaintiffs R. Craig Davis and Denise Davis ("Plaintiffs") initiated this matter on September 16, 2016 against Defendants Deutsche Bank National Trust ("Deutsche Bank"),

1

Homeward Residential, Inc. ("Homeward"), and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants") in the Court of Common Pleas of Lancaster County.  On October 13, 2016, Defendants filed a Notice of Removal to this Court.  On November 17, 2016, Defendants filed a Motion to Dismiss Complaint.  Thereafter, on September 19, 2017, this Court granted Defendants' Motion.  Counts I, II, III, and V of the Complaint were dismissed without prejudice, and Plaintiffs were given the opportunity to file an amended complaint.  On October 3, 2017, Plaintiffs filed their First Amended Civil Action ("Amended Complaint") (Dkt. No. 16). In Count I of the Amended Complaint, Plaintiffs allege a claim for breach of contract against Deutsche Bank and Homeward.  In Count II of the Amended Complaint, Plaintiffs allege a claim for breach of contract against Deutsche Bank and Ocwen.  In Count III of the Amended Complaint, Plaintiffs allege Ocwen violated the Real Estate Settlement Procedures Act.

## II. FACTUAL BACKGROUND

Taking the averments in the Amended Complaint in the light most favorable to the Plaintiffs, as the non-moving party, the pertinent facts to this Court's determination are as follows:

On January 6, 2006, Plaintiffs obtained a loan from American Bank in the amount of $260,000.  Am. Compl., ¶ 21.  Plaintiffs granted American Home Bank a mortgage as security for repayment of the loan on their home located at 5 Thicket Lane, Lancaster, PA 17602.[1]  Id., ¶

---

[1] Although the Plaintiffs do not state how Deutsche Bank became mortgagee of Plaintiffs' mortgage which was originally granted to American Home Bank, the Court notes that Exhibit A attached to the Amended Complaint is a copy of the docket entries from the Lancaster County Prothonotary for the case of Deutsche Bank National Trust Company v. Denise M. Davis, et al., Case No CI-15-05856.  The first entry dated July 8, 2015 states the following:

> Complaint in mortgage foreclosure filed by Sherri J. Braunstein, Esq. of Udren Law Offices, P.C. Mortgage was executed to American Home Bank, N.A., a Pennsylvania corporation. **Mortgage was assigned to Option One Mortgage Corporation, a California corporation in Mortgage Instrument No. 5609293 on 02/07/2006.  Mortgage was assigned to Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT2, Asset-Backed**

22. American Home Bank assigned the mortgage to Option One Mortgage Corporation in 2006, which then assigned it to Deutsche Bank in 2015. Am. Compl., Ex. A, p. 1. The mortgage agreement provides that the lender may hire or appoint a loan servicer to collect loan payments and administer the loan. Id., ¶ 21. The mortgage is a federally qualified loan as defined by the Real Estate Settlement Procedures Act ("RESPA"). Id., ¶ 23. Payments under the loan were $1,858.18, and it is not apparent that an escrow account for payment of taxes and insurance was established at the inception of the loan. Id., ¶¶ 24, 25.

The mortgage states that the "[b]orrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this [mortgage]." Defs.' Br., Ex. 1, p. 3 § 4. In and around 2011, the Plaintiffs fell behind in payment of the property taxes. Am. Compl., ¶ 28. In July 2012, Plaintiffs paid delinquent taxes in the amount of $5,599.54. Id., ¶ 29. Homeward, the loan servicer at this time, also paid the delinquent taxes. Id., ¶ 31. Plaintiffs notified Homeward that Plaintiffs had already paid the taxes and Homeward received a refund for the duplicate tax payment from the taxing authority. Id., ¶¶ 32, 33. The mortgage provides that the "[l]ender may at any time, collect and hold [funds for escrow items] in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require." Defs.' Br., Ex. 1, p. 2 § 2. The mortgage further states that all payments received will be applied in the following order: first to prepayment charges due under the note, then to funds for escrow items, then to interest due, then to principal due, and finally to late charges due under the note. Id., Ex. 1, p. 3 § 3.

---

**Certificates, Series 2006-OPT2 in Mortgage Instrument No. 6198166 on 03/31/2015.** Mortgage was recorded in Recorder of Deeds Office in Mortgage Instrument No. 5496043. For property located at 5 Thicket Lane, Lancaster, PA 17602. Mortgage was executed on 02/02/2006.

Am. Compl., Ex. A, p.1 (emphasis added). Based on this information and for purposes of this Motion, the Court assumes that both the mortgage and note were assigned to Deutsche Bank, which is now the mortgagee of the subject property.

3

Following the delinquent tax issue, Homeward began to attribute Plaintiffs' payment to an escrow account. Am. Compl., ¶ 35. Plaintiffs were not notified of the imposition of the escrow account or the new attribution of Plaintiffs' payments to the escrow account rather than to interest and principal. Id., ¶¶ 37, 39. Shortly thereafter, Defendant Ocwen replaced Homeward as the Plaintiffs' mortgage loan servicer. Id., ¶ 41. As the new mortgage servicer, Ocwen also required a tax escrow.[2] Id., ¶ 45. Ocwen attributed Plaintiffs' payments to the escrow account rather than interest and principal. Id., ¶ 47. Ocwen demanded a new monthly payment of $ 2,424.71, which is $566.53 more than the Plaintiffs' monthly payment prior to creation of the escrow account. Id., ¶¶ 53, 54.

Upon notification of the change in payment amount, Plaintiffs wrote to Ocwen on several occasions, requesting that Ocwen review its escrow analysis, which Plaintiffs perceived to be improperly researched, erroneous, and double the appropriate amount. Id. ¶¶ 50, 51, 55. The Plaintiffs wrote to Ocwen on July 21, 2013 and August 21, 2013, but these letters went unanswered. Id., ¶¶ 56, 58, 60. On August 14, 2014, Plaintiffs' counsel wrote to Ocwen regarding the perceived errors with the escrow account, as counsel deduced from his review of Escrow Summary Statements. Id., ¶ 61; Ex. F, p. 1. Nearly two weeks after Ocwen received the August 14, 2014 correspondence from the Plaintiffs' counsel, Ocwen responded by sending Plaintiffs' counsel an account statement. Id., ¶¶ 62, 63. On August 28, 2014, Plaintiffs' counsel again wrote to Ocwen concerning the perceived errors with the escrow account. Id., ¶ 64. Ocwen did not respond to that letter. Id., ¶ 65. Ocwen then sued the Plaintiffs in foreclosure on July 8, 2015 in the Court of Common Pleas of Lancaster County. Am. Compl., ¶ 68; Ex. A, p. 1.

---

[2] Confusingly, Plaintiffs contend that prior to the imposition of the tax escrow by Ocwen, they did not have an escrow requirement. Am. Compl., ¶ 46. However, Plaintiffs also contend that Homeward, Ocwen's immediate predecessor, created and imposed an escrow requirement. Id., ¶¶ 35, 37.

4

## III. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) (citation omitted).

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 668. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. When facing a motion to dismiss for failure to state a claim, district courts are directed to conduct a three-part analysis. Connelly v. Lance Constr. Corp., 809 F.2d 780, 787 (3d Cir. Jan. 11, 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. See also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (Citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual

5

allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

IV. **DISCUSSION**

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). Plaintiffs attach to the Amended Complaint the second page of the mortgage contract at Exhibit C. The Defendants, on the other hand, attach the entire mortgage contract to their Motion to Dismiss. See Defs.' Br., Ex. 1.

Because the Plaintiffs have undisputed actual notice of all the information in the Defendants' motion and the Plaintiffs have relied upon this information in framing the Amended Complaint, this Court is able to view the entire mortgage contract on review of this motion to dismiss. Pension Benefit Guaranty Corp. v. White Consolid. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert denied, 503 U.S. 960 (1992)). See also Jacobs v. Halper, 116 F.Supp.3d 469, 473 n.1 (E.D. Pa. 2015) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (entire catalogue attached as exhibit to motion to dismiss considered where same catalogue was attached in part as exhibits to amended complaint relied upon by plaintiff).

A. **Breach of Contract – Deutsche Bank and Homeward (Count I) and Deutsche Bank and Ocwen (Count II)**

In Count I of the Amended Complaint, Plaintiffs claim that the mortgagee, Deutsche Bank, and the first loan servicer, Homeward, breached the mortgage contract under Pennsylvania law. Specifically, Plaintiffs allege the following:

6

> 72. [Homeward] was acting as the loan servicer pursuant to the contract between Deutsche [Bank] and Plaintiff. Pursuant to this contract, [Homeward] had a duty to properly service the loan, provide appropriate notice of escrow changes, perform escrow analysis and provide both an initial escrow statement and a short year escrow statement so as to not manufacture default.
>
> 73. [Homeward] failed to notify Plaintiffs of the lifting of the escrow waiver and the imposition of an escrow account.
>
> 74. [Homeward] failed to provide an initial and/or short year escrow disclosure statement.
>
> 75. [Homeward] failed to notify Plaintiffs that the attribution of their payments would significantly change.
>
> 76. [Homeward] failed to properly service the mortgage loan, as payments were frequently misapplied to the escrow accounts and not the principal and interest respectively as was required in the contract.
>
> 77. [Homeward]'s actions breached the contract between Plaintiff and Deutsche [Bank].
>
> 78. As a direct and proximate cause of the actions of [Homeward] as agent Deutsche Bank breached their contract.
>
> 79. As a direct and proximate result of the actions of the Defendants, Deutsche [Bank] and [Homeward], Plaintiff has been damaged.

Am. Compl., pp. 8-9 ¶¶ 72-79. Similarly, in Count II of the Amended Complaint, Plaintiffs allege breach of contract against the successor mortgage servicer, Ocwen, and the mortgagee, Deutsche Bank. Specifically, Plaintiffs allege the following:

> 82. Ocwen was acting as the loan servicer pursuant to the contract between Deutsche [Bank] and Plaintiff. Pursuant to this contract, Ocwen had a duty to properly service the loan, provide appropriate notice of escrow changes, perform escrow analysis and provide both an initial escrow statement so as to not manufacture a default.
>
> 83. Ocwen failed to notify Plaintiffs of the lifting of the escrow waiver and the imposition of an escrow account.
>
> 84. Ocwen failed to provide an initial escrow disclosure statement.
>
> 85. Ocwen failed to notify Plaintiffs that the attribution of their payments would

significantly change.

> 86. As a result of the above, Ocwen on behalf of Deutsche [Bank] failed to properly service the mortgage loan.
>
> 87. Ocwen's actions breached the contract between Plaintiff and Deutsche [Bank.]
>
> 88. As a direct and proximate cause of the actions of Ocwen as agent Deutsche Bank, Deutsche [Bank] is in breach of contract.
>
> 89. As a direct and proximate result of the actions of the Defendants Deutsche [Bank] and Ocwen Plaintiff has been damaged.

Am. Compl., pp. 9-10 ¶¶ 82-89. With minor exception, Plaintiffs' claims against Ocwen and Deutsche Bank in Count II are identical to the claims raised against Homeward and Deutsche Bank in Count I. In order to bring a claim for breach of contract under Pennsylvania law, the plaintiff must plead the existence of a contract, breach of that contract, and damages as the result of that breach. Zokaites Contr., Inc. v. Trant Corp., 968 A.2d 1282, 1287 (Pa. Super. 2009).

In this case, neither Plaintiffs nor Defendants dispute that a contract existed. However, Defendants contend that Plaintiffs have failed to allege breach and damages. Defendants contend that Plaintiffs only allegation of breach of contract damages is the legal conclusion that Plaintiffs were damaged "[a]s a direct and proximate result of the actions of the Defendants[.]" Am. Compl., ¶ 79. Defendants further contend that Plaintiffs have not pled sufficient facts to establish breach because most, if not all, of the actions taken by Defendants were in accordance with the provisions of the contract and applicable law. Defendants also contend that all of the Plaintiffs' allegations are false. In response, Plaintiffs aver that the imposition of an escrow account without notice and the resultant increased monthly payments were breaches of contract by Homeward and Ocwen that caused Plaintiffs damages.

As previously explained by this Court, a plain reading of the mortgage contract permits the loan servicer to create an escrow account. In relevant part, the mortgage contract

provides that:

> [l]ender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for [b]orrower's escrow account . . . Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

Defs.' Br., Ex. 1, p. 2, § 2. This portion of the mortgage contract expressly permits a loan servicer to create an escrow account and collect funds for escrow items. Moreover, this provision grants the loan servicer discretion to collect funds for an escrow account at *any time*. There is nothing in the text of Section 2 of the mortgage contract that required Homeward or Ocwen to notify Plaintiffs of the imposition of the escrow account. In fact, Plaintiffs admit this, noting that "[d]espite the fact that Homeward and Ocwen were not required to notify the Plaintiffs at the time of the imposition of escrow, this was an instance where the facts dictate that some kind of notice should have been sent." Pls.' Br., p. 9. It is not the role of this Court to consider what Plaintiffs believe should have happened. Rather, it is the job of this Court to consider what actually happened and determine whether a violation of the law has occurred. The alleged failure of Defendants to notify Plaintiffs of the imposition of an escrow account did not breach the mortgage contract.

Plaintiffs next contend that Defendants failed to provide certain initial and short year escrow disclosure statements. Am. Compl., ¶¶ 74, 84. Defendants correctly point out that Plaintiffs do not state whether this allegation of breach is based on the terms of the mortgage or the requirements of RESPA. The Defendants first contend that the alleged failure to provide these statements does not violate the mortgage contract because the terms of the contract do not require disclosure statements to be issued. Alternatively, Defendants argue that if Plaintiffs' contention is that the failure to issue the initial disclosure statements violated RESPA and caused

9

a breach of the mortgage, then this claim must also fail because the mortgage contract does not incorporate RESPA's provisions on escrow disclosure statements and those RESPA provisions do not support a private right of action. Plaintiffs counter by arguing that Defendants have misapplied the case law pertaining to incorporation of RESPA provisions to the mortgage contract at issue in this case. Plaintiffs argue that all provisions of RESPA have been incorporated into the mortgage contract by virtue of Section 15, which provides that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Id. Plaintiffs' argument is unpersuasive.

Under Pennsylvania law, the rules of construction for contracts "do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it." Tenos v. State Farm Ins. Co., 716 A.2d 626, 631 (Pa. Super. 1998). Moreover, under the contract interpretation maxim that the "mention of one thing implies the exclusion of another[,]" a court may not add language to one provision if that language was specifically included in a separate provision. See Madison Constr. Co. v. The Harleysville Mut. Ins. Co., 678 A.2d 802, 806 (Pa. Super. 1996). In this case, Section 2 of the mortgage contract between Plaintiffs and Defendants expressly references and incorporates only the provisions of RESPA that delineate the maximum amount of escrow funds a loan servicer can collect from a borrower. Defs.' Br., Ex. 1, p. 2, § 2. However, as Defendants correctly contend, the mortgage contract does not expressly incorporate or reference any other provisions of RESPA.

To find, as Plaintiffs contend, that every provision of RESPA has been incorporated into the mortgage contract by virtue of the general reference to federal law in Section 15 would make the express reference to RESPA in Section 2 superfluous. Such a result would be inconsistent with Pennsylvania rules of construction for contracts. The fact that

10

RESPA has been incorporated in one particular provision of the mortgage contract but not in any other provision evidences an intention to exclude those portions of RESPA not expressly mentioned. Thus, the alleged failure of Defendants to send Plaintiffs an initial escrow statement and a short year escrow statement did not breach the mortgage contract.[3]

Plaintiffs next contend that Homeward and Ocwen breached the mortgage contract by "fail[ing] to notify Plaintiffs that the attribution of their payments would significantly change." Am. Compl., ¶¶ 75, 85. As correctly pointed out by Defendants, no such notification was required. Section 3 of the mortgage contract provides that all payments received will be applied in the following order: first to prepayment charges due under the note, then to funds for escrow items, then to interest due, then to principal due, and finally to late charges due. Defs.' Br., Ex. 1, p. 3 § 3. As such, Plaintiffs had actual notice at the time the mortgage contract was signed that payments would be applied to funds for escrow items before interest and principal. This, coupled with the Defendants' right to implement an escrow account "at any time," leads to the conclusion that Defendants were not required to notify Plaintiffs that their payments would be attributed differently after the escrow account was implemented. Defs.' Br., Ex. 1, p. 2, § 2. The Defendants did not breach the mortgage contract on this ground.

Finally, Plaintiffs contend that Homeward "failed to properly service the mortgage loan, as payments were frequently misapplied to the escrow accounts and not the

---

[3] Furthermore, this Court doubts that Defendants failed to send Plaintiffs the initial escrow statements and short year escrow statements. As Defendants appropriately note, Exhibit F attached to the Amended Complaint is a copy of the August 14, 2014 letter sent by Plaintiffs' Attorney, Joseph A. Diorio, to Ocwen detailing the perceived escrow error. In that letter, Attorney Diorio specifically states that his "review of the Escrow Summary Statements" indicates a problem with the escrow amount being charged. Am. Compl., Ex. F. While it is unclear to this Court whether the "Escrow Summary Statements" are the exact disclosure statements Plaintiffs claim Defendants were required to but never sent, it is clear that Plaintiffs received some documentation stating that an escrow account had been created and that additional payments would be required, which directly contradicts Plaintiffs' claim that Homeward and Ocwen failed to notify them about the imposition of the escrow account. Plaintiffs contend that they contacted Homeward and Ocwen numerous times and expressed concerns about the escrow account and the changes in their payment amount. Am. Compl. ¶¶ 37, 55, 61, 64. Plaintiffs would not have been able to make these inquiries had they not received notifications about the escrow account and the new payment requirements.

principal and interest respectively as was required in the contract." Am. Compl., ¶ 76. Plaintiffs' contention in Paragraph 76 of the Amended Complaint is duplicative of their contention in Paragraph 75. Based on a plain reading of Section 3 of the mortgage contract, all payments received were to be applied in the following order: first to prepayment charges due under the note, then to funds for escrow items, then to interest due, then to principal due, and finally to late charges due. Defs.' Br., Ex. 1, p. 3 § 3. Defendants were entitled to apply the Plaintiffs' mortgage payments to the escrow account prior to applying the payment to principal and interest. Plaintiffs' contention directly contradicts the terms of the mortgage contract.

Taking all of the Plaintiffs' allegations in Count I and Count II of the Amended Complaint as true and in a light most favorable to them, Plaintiffs fail to state a claim upon which relief can be granted for breach of contract as to Homeward, Ocwen and Deutsche Bank. According to the Third Circuit, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Jones v. ABN AMRO Mortg. Grp., Inc., 551 F. Supp. 2d 400, 411 (E.D. Pa. 2008), aff'd, 606 F.3d 119 (3d Cir. 2010) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004))). However, "a District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings." Henry v. City of Allentown, Civ. No. 12-1380, 2013 U.S. Dist. LEXIS 172792, 2013 WL 6409307, *2 (E.D. Pa. Dec. 9, 2013) (citing In re: Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997)). Here, further amendment would be futile because the actions, or lack thereof, taken by Defendants do not support a claim for breach of contract. Plaintiffs were given an opportunity to amend their complaint and were unable to address the deficiencies previously

noted by this Court. Accordingly, the Motion to Dismiss is granted with respect to Count I and Count II of the Amended Complaint. Counts I and II are dismissed with prejudice.

      **B.**      **Violation of Real Estate Settlement Procedures Act – Ocwen (Count III)**

In Count III of the Amended Complaint, the Plaintiffs allege that Ocwen violated RESPA by failing to respond to their qualified written requests for information, causing Plaintiffs to suffer damages. Defendants move to dismiss this claim on the basis that the Plaintiffs have, contrary to this Courts prior invitation, failed to set "forth a more specific damages claim providing a causal connection between Ocwen's actions and Plaintiffs' damages." Defs.' Br., p. 15.

The essential pleading requirements for a RESPA claim are: (1) the submission of a qualified written request by a borrower to a loan servicer for information relating to the servicing of the loan, (2) a failure by the loan servicer to timely respond, and (3) damages. Hawk v. Carrington Mortg. Servs., LLC, 2016 U.S. Dist. LEXIS 87532, at *12 (M.D. Pa. June 29, 2016). This Court previously determined that Plaintiffs have pled sufficient facts to satisfy the first two requirements of a RESPA claim. See Davis v. Deutsche Bank Nat'l Trust Co., Civ. No. 16-5382, 2017 U.S. Dist. LEXIS 151594, 2013 WL 6409307, *18-20 (E.D. Pa. Sept. 19, 2017). A review of the Amended Complaint reveals that the factual basis underlying the RESPA claim against Ocwen is nearly identical to that in the original Complaint. Compare Compl., ¶¶ 48-62, with Am. Compl, ¶¶ 55-69. For purposes of this Motion, Plaintiffs again appear to have met the first and second requirements for a RESPA claim.

The third requirement, damages, is contested. RESPA permits individual borrowers to sue loan servicers for damages in certain defined circumstances, specifically:

> (f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

13

> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of –
>   (A) any actual damages to the borrower as a result of the failure; and
>   (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f). Merely alleging damages is not enough. Hawk, 2016 U.S. Dist. LEXIS 87532, at *12-13. The Plaintiff must allege that the breach resulted in actual damages. Jones v. Select Portfolio Servicing, Inc., 2008 U.S. Dist. LEXIS 33284, at *27 (E.D. Pa. Apr. 22, 2008). See Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006). The plaintiff must also establish a causal link between the alleged violations and the alleged damages. Jones, 2008 U.S. Dist. LEXIS 33284, at *28. Likewise, the borrower has the responsibility to present specific evidence to establish a causal link between the financing institution's violation and the borrower's injuries. Straker v. Deutsche Bank Nat'l Trust, 2012 U.S. Dist. LEXIS 187379, at *31 (M.D. Pa. Apr. 26, 2012).

For statutory damages for non-compliance of RESPA, the plaintiff must establish a pattern of practice or practice of non-compliance of § 2605. Gorbaty v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 55284, at *19 (E.D.N.Y. 2012). The plaintiff must show that the alleged violations were the standard or routine way of operating for the allegedly non-compliant loan servicer. McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009).

Regarding their claim for statutory damages under RESPA, Plaintiffs contend that Ocwen has engaged in a "pattern and practice" of violating RESPA. Am. Compl., ¶ 102. In support of their claim, Plaintiffs allege that Ocwen "has a pattern and practice of violating RESPA with other customers" and that Ocwen "has been sued by the Consumer Financial Protection Bureau and the United States District Court for the Southern District of Florida for multiple RESPA violations." Am. Compl., ¶¶ 102g, 102h. However, Plaintiffs offer no specific

information or factual averments about these "other customers" or the alleged violations by Ocwen. This Court has no way to discern whether Ocwen's alleged violations with other customers support a pattern or practice of failing to respond to qualified written requests. As further support of their claim for statutory damages, the Plaintiffs again offer their four letters to Ocwen and provide evidence that Ocwen did not respond to two of the four letters. However, this is insufficient to prove a pattern or practice of violations of RESPA on Ocwen's part. See Gorbaty, 2012 U.S. Dist. LEXIS 55284, at *19 (mere failure to respond to two letters is not sufficient to establish a pattern or practice). Thus, Plaintiffs' claim for statutory damages pursuant to alleged RESPA violations must be dismissed. See 12 U.S.C. § 2605(f)(1)(B).

Turning now to actual damages, Plaintiffs allege that they suffered "actual damages including payment of counsel fees to defend the foreclosure and prosecution of this case but also limited to anxiety, worry, distress, . . . and enhanced damages." Am. Compl., ¶ 104. The Defendants argue that Plaintiffs' supplementation of their actual damages to include counsel fees in bringing the instant lawsuit do not constitute actual damages under RESPA. The Defendants further argue that Plaintiffs fail to link their alleged actual damages to Ocwen's failure to respond to the Plaintiffs' letters. Plaintiffs contend that they have provided sufficient evidence of a causal link because "[r]ather than properly and timely respond to [Plaintiffs'] letters, Ocwen ignored the [escrow] problem" and "triggered a default," which "subsequently lead (sic) to Ocwen bringing an improper foreclosure action." Pl. Br., p. 12.

"Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014) (quoting Cortez v.

15

Keystone Bank, Inc., Civ. No. 98-2457, 2000 U.S. Dist. LEXIS 5705, 2000 WL 536666, at *39-40 (E.D. Pa. May 2, 2000)). RESPA expressly requires that the actual damages arise "as a result of the failure" of the loan servicer to comply with the provisions of RESPA. See 12 U.S.C. § 2605(f). Moreover, numerous courts have found that litigation expenses are insufficient to satisfy the actual damages requirement of a RESPA claim because RESPA also allows Plaintiffs to recover fees and expenses in addition to actual damages. See Giordano v. MGC Mortg., Inc., 160 F. Supp. 3d 778, 783 (D.N.J. 2016) (collecting cases). Thus, Plaintiffs' allegation that they suffered actual damages in the form of "payment of counsel fees to defend the foreclosure and prosecution of this case" is insufficient to support a RESPA claim. Am. Compl., ¶ 104.

Plaintiffs also contend that they suffered actual damages in the form of "anxiety, worry, [and] distress[.]" Id. Several courts have determined that non-pecuniary damages may be recoverable under RESPA. See Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 696 (7th Cir. 2011); McLean v. GMAC Mortg. Corp., 398 F. App'x 467, 471 (11th Cir. 2010); Benner v. Bank of Am., NA., 917 F. Supp. 2d 338, 365 (E.D. Pa. 2013); Giordano, 160 F. Supp. 3d at 784. However, even if such damages are recoverable, "bare conclusory statements . . . fail to satisfy Rule 8(a) much less RESPA's requirement that damages be 'as a result of['] the alleged violation." Giordano, 160 F. Supp. 3d at 784. Plaintiffs' Amended Complaint contains no factual averments linking their anxiety, worry, and distress to Ocwen's failure to respond to two of their four letters. Plaintiffs simply state in a conclusory manner that they "sustained actual damages including . . . anxiety, worry, [and] distress", which is insufficient to satisfy the requirements of a RESPA claim. Am. Compl., ¶ 104. Because Plaintiffs have previously been granted leave to amend their complaint to "set[] forth a more specific damages claim providing a causal connection between Ocwen's actions and Plaintiffs' damages" and have failed to do so

despite this Court's express invitation, no further leave to amend will be granted.  See <u>Davis v. Deutsche Bank Nat'l Trust Co.</u>, Civ. No. 16-5382, 2017 U.S. Dist. LEXIS 151594, 2013 WL 6409307, *16-17 (E.D. Pa. Sept. 19, 2017).  The Motion to Dismiss is granted with respect to Count III of the Amended Complaint.

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss will be granted and the Amended Complaint dismissed in its entirety with prejudice.  An appropriate Order follows.